Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| EDNELIS LORRAINE MUÑIZ MARTELL<br><br>Parte Apelante<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE MAYAGÜEZ; ESTADO LIBRE ASOCIADO DE PUERTO RICO; DEPARTAMENTO DE RECREACIÓN Y DEPORTES; DEPARTAMENTO DE TRANSPORTACIÓN Y OBRAS PÚBLICAS; ILUMINADA LÓPEZ MATOS; LUIS MANUEL MUÑIZ PÉREZ; LA ESPOSA DE ESTE, EDNA INÉS MARTELL GONZÁLEZ Y LA SOCIEDAD LEGAL DE GANANCIALES E ISMAEL VALLE OTERO<br><br>Parte Apelada | TA2025AP00694 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Civil núm. MZ2021CV00358<br><br>Sobre:<br><br>Usucapión |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli.

Trigo Ferraiuoli, jueza ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de febrero de 2026.

Comparece la parte apelante, Ednelis Lorraine Muñiz Martell (Muñiz Martell o apelante), y solicita que revoquemos la Sentencia emitida 27 de junio de 2025 y notificada el 30 de junio de 2025, por el Tribunal de Primera Instancia, Sala de Aguadilla (TPI). En virtud del referido dictamen, el TPI declaró No Ha Lugar la demanda de usucapión instada por Muñiz Martell.

La parte apelada no compareció en oposición al recurso. Por tanto, este Tribunal da por perfeccionado el recurso para su consideración en los méritos, sin el beneficio de su comparecencia.

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

## I.　　Trasfondo fáctico y procesal

El 18 de marzo de 2021, Muñiz Martell presentó demanda sobre acción civil[1] en contra del Municipio de Mayagüez (Municipio), el Estado Libre Asociado de Puerto Rico (ELA o Estado), el Departamento de Recreación y Deportes (DRD), el Departamento de Transportación y Obras Públicas (DTOP), la Sra. Iluminada López Matos (López Matos), el Sr. Luis Manuel Muñiz Pérez, su esposa Eda Iris Martell González, la sociedad legal de gananciales compuesta por estos e Ismael Valle Otero.

En síntesis, la apelante alegó que adquirió la propiedad en cuestión (en adelante **Finca 29,358**), a título de "Compraventa a Precio Aplazado", mediante la Escritura Núm. 4 otorgada el 1 de febrero de 2019 y que saldó la deuda. La propiedad se describe a continuación:

> A---RÚSTICA: Solar radicado en el Barrio Quebrada Grande del término Municipal de Mayagüez, Puerto Rico con una cabida superficial de NOVECIENTOS SEIS PUNTO OCHOCIENTOS TRECE METROS CUADRADOS (906.813). Colinda por el NORTE, con el solar "A" segregado; **por el SUR, con área de parque previamente segregado**; por el ESTE, con faja de terreno dedicada a uso público; y por el OESTE, con terrenos de Ismael Valle y terrenos de Edna Martell González.----------------------------------------------------------
>
> ---CONSTA INSCRITA al folio ciento diecinueve (119) del tomo mil quinientos catorce (1,514) de Mayagüez, finca número veintinueve mil trescientos cincuenta y ocho (29,358), inscripción séptima del Registro de la Propiedad. Sección de Mayagüez.-------------------------
>
> ---NÚMERO DE CATASTRO: 253-089-779-98-000.-----
>
> ---La dirección física de la finca objeto de esta Demanda es: KILÓMTETRO Y HECTOMETRO INTERIOR, 0.1 CARRETERA 348, BO. QUEBRADA GRANDE, CALLE SANTA ANA, CAMINO JUAN LÓPEZ, MAYAGUEZ, PUERTO RICO 00681.-------------------------------------

---

[1] Conforme surge del expediente, la causa de acción se registró bajo expediente de dominio. El 9 de marzo de 2022, el TPI emitió orden a Secretaría a los efectos de que la causa de acción se registrara bajo Usucapión. (Entrada 38).

(Énfasis nuestro).

También añadió que ella y sus antecesores estuvieron en posesión de la referida propiedad de forma pública, pacífica e ininterrumpida por más de veinte (20) años, operando la prescripción extintiva adquisitiva extraordinaria descrita en el Art. 788 del Código Civil de Puerto Rico, aun cuando la adquirieron con justo título.

Por otra parte, en cuanto al predio que colinda por el SUR, denominado "área de parque" (en adelante, **área de parque** o **Finca 35,687**), Muñiz Martell alegó que este fue denominado incorrectamente como tal y que dicha "área de parque" no existe, pues el área de parque del sector queda ubicada al otro lado de la calle. La apelante expresó que el "área de parque" constaba inscrito en el Registro de la Propiedad a nombre de Iluminada López Matos. La apelada alegó que López Matos jamás ha objetado que el área de parque sea parte del solar de Martell Muñiz, ni ha entablado reclamación sobre dicho predio. Por ello, arguyó que también advino a ser dueña del área de parque mediante prescripción adquisitiva extraordinaria y que dicho predio es parte del solar que está a su nombre. Por lo anterior, solicitó al TPI que declare con lugar la demanda y ordenara la inmatriculación del área de parque a su nombre.

Luego de varios trámites procesales, el ELA contestó la demanda el 9 de febrero de 2022[2]. Así las cosas, el 9 de septiembre de 2022, Muñiz Martell solicitó el desistimiento en cuanto al Estado, el Municipio de Mayagüez, Departamento de Recreación y Deportes y Departamento de Transportación y Obras Públicas. En cuanto a estos codemandados, el TPI emitió *Sentencia Parcial* de

---

[2] Entrada 34.

desistimiento, sin perjuicio, el 3 de noviembre de 2022, notificada 8 de noviembre de 2022[3].

Luego de numerosos incidentes procesales, el 11 de abril de 2024, se celebró el juicio. La prueba testifical inició con el testimonio bajo juramento de Ednairis Martell González y luego el testimonio de Martell Muñiz. Entre la prueba documental desfilada, esta incluyó lo siguiente:

    a.    Escritura Núm. 38 otorgada el 9 de marzo de 1988 ante el notario Jovino Martínez Ramírez.

    b.    Escritura número 9 otorgada el 9 de mayo de 2007 ante el notario Pilar Terasa Salas.

    c.    Impresión a color de foto aérea de catastro digital finca 29.233.089-779-98-000.

    d.    Plano del Agrimensor Wilfredo Rivera.

El TPI le concedió término a la apelante para presentar por escrito el tracto registral de la propiedad y que cargara a SUMAC la prueba antes mencionada, quedando el asunto sometido para adjudicación. El 16 de abril de 2025, Muñiz Martell presentó *Moción Ofreciendo el Tracto Registral de Solar Objeto de Asunto de Autos-Solar 160.276 metros cuadrados.*[4]

El 27 de junio de 2025, notificada el 30 de junio de 2025, el TPI emitió la sentencia apelada. En virtud de esta, el TPI emitió 43 determinaciones de hechos, de las cuales transcribimos aquellas pertinentes a la controversia ante nos:

1. La parte demandante Ednelis Lorraine Muñiz Martell, es mayor de edad, soltera, propietaria y vecina de Mayagüez, Puerto Rico, con dirección postal: HC 7 Box 27033, Mayagüez, PR 00681 y con dirección física en: Carretera 348, KM 0.1, Barrio Quebrada Grande, Mayagüez, Puerto Rico 00680.

---

[3] Entrada 59.

[4] Entrada 81. Junto a esta acompañó los siguientes anejos: Anejo A-Escritura Núm. 27 del 7 de agosto de 1987 sobre Segregación; Anejo B-Escritura Núm. 4 del 1 de febrero de 2019 sobre Compraventa a Precio Alzado; Anejo C-Escritura Núm. 9 del 3 de mayo de 2007 sobre Compraventa e Hipoteca; Anejo D-Escritura 12 del 22 de junio de 1998 sobre Compraventa; ARPE-Decisión Aprobando Plano de Inscripción Condicionado y Finca 29358 Tomo Karibe.

2. La parte demandante es dueña registral de la propiedad que se describe a continuación:

---RÚSTICA: Solar radicado en el Barrio Quebrada Grande del término Municipal de Mayagüez, Puerto Rico, con una cabida superficial de NOVECIENTOS SEIS PUNTO OCHOCIENTOS TRECE METROS CUADRADOS (906.813). Colinda por el NORTE, con el solar "A" segregado; por el SUR, con área de parque previamente segregado; por el ESTE, con faja de terreno dedicada a uso público; y por el OESTE, con terrenos de Ismael Valle y terrenos de Edna Martell González.------------------------------------------------ ---CONSTA INSCRITA al folio ciento diecinueve (119) del tomo mil quinientos catorce (1,514) de Mayagüez, finca número veintinueve mil trescientos cincuenta y ocho (29,358), inscripción 7ma, Registro de la Propiedad, Sección de Mayagüez.----------------------

[…]

3. La parte demandante declaró que se encuentra en posesión de la porción de terreno con la que colinda por el Sur de su propiedad y que se identifica en la descripción de la propiedad antes descrita como un "área de parque" previamente segregada.

4. El "área de parque" ubica en el lindero sur de la finca 29,358 de la demandante **según las constancias del Registro de la Propiedad, de las que hemos tomado conocimiento judicial, establecen que es un Uso Público**, con cabida de 160.279 mc, identificado como Lote Dos ("2") – "Área de Parque", que fue segregado de la finca 29,358 el 7 de agosto de 1987 mediante la Escritura N[ú]mero 27.

5. A la fecha del otorgamiento de la escritura la finca número 29,358 pertenecía a la codemandada Iluminada López Matos, quien la adquirió de Patria López Matos mediante la Escritura Número 25 de Compraventa otorgada el 7 de agosto de 1987.

6. **La Sra. Iluminada López Matos, luego de adquirir por compraventa la finca número 29,358, otorgó la Escritura Número 27, sobre Segregación, el 7 de agosto de 1987 en Mayagüez y ante el notario Fernando Bayrón Toro, mediante la cual se segregaron dos solares identificados como Solar Uno "1" y Solar Dos "2", así como dos Lotes para Uso Público, el primero identificado como Lote Uno ("1") –"Ensanche Camino" y el segundo identificado como Lote Dos ("2") – "Área de Parque".**

7. **El Uso Público Lote Dos ("2") –"Área de Parque", consta inscrito con número de finca 35,687, al folio 128 del tomo 1160 de Mayagüez, en el Registro de la Propiedad y a nombre de Iluminada López Matos.** Asimismo, aparecen inscritos a favor de la Sra. Iluminada López Matos al Solar Uno ("1") finca número 35,684, Solar Dos ("2") finca número 35,685 y el Uso Público Lote Uno ("1") finca número 35,686, a los folios

116, 121 y 126, respectivamente, del Tomo 1160 de Mayagüez del Registro de la Propiedad de Mayagüez.

8. El Uso Público "Área de Parque", ubica a la colindancia Sur de la finca número 29,358 inscrita a favor de la demandante. Conforme se desprende de la Certificación Registral que obra en los autos, la finca número 35,687 se describe como sigue:

> ---RÚSTICA: Barrio Quebrada Grande de Mayagüez: **Área de Parque dedicada a Uso Público**, con cabida de 106.276 metros cuadrados. Linderos: Norte, con remanente de la finca. Sur, con calle municipal. Este, con carretera municipal. Oeste, con terrenos de Iluminada López Matos.-----------------------------
> ---Inscrita a favor de Iluminada López Matos, soltera y vecina de Mayagüez, con número de finca 35,687, Registro de la Propiedad, Sección I, Mayagüez.------------------------------------------------
> ---La propiedad es segregación de la finca 29,358, **habiendo sido segregada para Uso Público**, con valor de $500.00.------------------------------------

9. De conformidad con la prueba documental admitida, consistente de varias escrituras públicas, el 7 de agosto de 1987, la Sra. Iluminada López Matos, como compradora, y la Sra. Patria López Matos como vendedora, otorgaron la escritura pública número 25 sobre compraventa ante el notario Fernando Bayron Toro, en Mayagüez, Puerto Rico. Mediante dicha escritura la compradora adquirió, entre otros, el remanente de la finca número 29,358... .

10. [...]

11. El mismo 7 de agosto de 1987, luego de otorgar la escritura de compraventa núm. 25, la Sra. Iluminada López Soto, otorgó como primera y única, (sic) parte la escritura pública núm. 27 sobre Segregación, ante el mismo notario Fernando Bayrón Toro.

12. La segregación fue debidamente autorizada por la Administración de Reglamentos y Permisos (ARPE) mediante Resolución dictada en el caso número 85-29-D-108 MPL, habiéndose aprobado el Plano de Lotificación núm. 87-4-0323 se autorizó la segregación de los siguientes solares y lotes:

> [...]

> d.---Lote Núm. Dos ("2"): para Uso Público: Área de parque: con cabida de (160.276 mc), colindante por el Norte, con remanente de la finca principal; por el Sur, con calle municipal; por el Este carretera Municipal; por el Oeste con terrenos de Iluminada Torres Matos. --------------
> ---Inscrito, Finca Número 35,687, al folio 128 del tomo 1106 del Registro de la Propiedad de Mayagüez.------------------------------------------------

13.     [...]

14.     [...]

15.     El Lote Dos ("2") "Área de Parque" con cabida de 106.276 mc procedente de la finca núm. 29,358 adquirida por la Sra. Iluminada López Matos, propiedad al presente de la demandante, es la finca objeto de usucapión en este caso.

16.     [...]

[...]

21. Previo a que la parte demandante adviniera a ser propietaria de alguna propiedad, su madre Edna Iris Martell González adquirió una propiedad con cabida de 900.4114 mc. Específicamente, el 9 de marzo de 1988, R.I.D. Corporation, representada por su presidente Damián Vélez Román y la Sra. Edna Iris Martell González otorgaron la escritura pública número 38, sobre *Compraventa e Hipoteca en Garantía de Precio Aplazado,* ante el abogado-notario Jovino Martínez Ramírez. A la fecha del otorgamiento de la escritura las circunstancias personales de la Sra. Edna Iris Martell González eran: mayor de edad, soltera, empleada y vecina de Mayagüez.

[...]

24. Por otra parte, la edificación residencial construida sobre la propiedad fue adquirida mediante (sic) por la Sra. Edna Iris Martell González la escritura de *Acta de Edificación* número 37, otorgada el mismo 25 de octubre de 1985.

25. El 22 de junio de 1998, Iluminada López Matos y Seconadfi, Inc. otorgaron la escritura pública número doce (12) sobre Compraventa ante la notaria-pública Lcda. Pilar Terrasa Sales sobre la propiedad descrita a continuación... .

26. Mediante la antes mencionada escritura de compraventa entre Iluminada López Matos como vendedora y Seconadfi, Inc., como parte compradora, la parte compradora advino a ser dueño de ambas propiedades. **En cuanto a la propiedad identificada como la finca 29,358 que perteneció a la Sra. Iluminada López Matos, Seconadfi, Inc., tramitó un permiso de segregación ante la ARPE, solicitud: 06DX300000-03850, Catastro 233-000-010-12, para la formación de un Solar A y un Uso Público.**

27. El 13 de diciembre de 2006 la solicitud de permiso fue aprobada, asimismo fue aprobado el Plano de Inscripción. Mediante el permiso le fue aprobada la formación del Solar A de 906.813 metros cuadrados **y como condiciones Sine Qua Non un USO PÚBLICO de 731.991 mc.** El Solar A que pasó a ser la finca número 43,689, así como el USO PÚBLICO de 731.991 metros cuadrados que pasó a ser la finca número 43,690. **Luego**

**de las segregaciones realizadas por Serconadfi, Inc., el remanente de la finca 29,358 quedó reducido a una cabida de 906,813 metros cuadrados.**

28. El 13 de diciembre de 2006, la anteriormente conocida como la Administración de Reglamentos y Permisos (ARPE), emitió una resolución *Aprobando plano de inscripción condicionado en el barrio quebrada grande-sector camino Juan López del Municipio de Mayagüez.*

29. El 3 de mayo de 2007, Serconadfi, Inc., representada por César Luis Ribot Justiniano, como la parte vendedora, y juntos como la parte compradora, Luis Manuel Muñiz Pérez y Edna Iris Martell González, otorgaron la escritura número nueve (9) sobre *Compraventa e Hipoteca* ante la notaria pública Lcda. Pilar Terrasa Sales, **la parte vendedora Serconadfi, Inc., le vendió a la compradora Edna Iris Martell González el remanente de la finca 29,358 cuya cabida era de 906.813 metros cuadrados con la siguiente descripción:**

> "---RÚSTICA: Solar radicado en el Barrio Quebrada Grande del término Municipal de Mayagüez con una cabida superficial de NOVECIENTOS SEIS PUNTO OCHOCIENTOS TRECE METROS CUADRADOS (906.813 MC). Colinda por el NORTE, con el Solar A segregado; **por el SUR, con área de parque previamente segregada; por el ESTE, con faja de terreno dedicado a uso público;** y por el OESTE, con terrenos de Ismael Valle y Edna Martell González.--------------------------------------------------
>
> […]

33. El 1 de febrero de 2019, Luis Manuel Muñiz Pérez y Edna Iris Martell González como vendedores y su hija Ednelis Lorraine Muñiz Martell como compradora, otorgaron la Escritura Número 4 de *Compraventa a Precio Aplazado,* ante el notario público Lcdo. Ángel Franco Padilla Martínez.

34. El plano de mensura certificado por el Agrim. Wilfredo Rivera, licencia número 8039, **incluye el solar de 906.813 metros cuadrados, finca núm. 29,358 inscrita a favor de Ednelis L. Muñiz Martell y el área de parque inscrita a favor de la demandada Iluminada López Matos.**

**35. De la certificación registral emitida el 7 de julio de 2022, surge que la propiedad 29,358 consta inscrita "[a] favor de Ednelis Lorraine Muñiz Martell….**

**36. De la certificación registral emitida el 18 de mayo de 2023 surge que la finca 35,687 se encuentra "[i]nscrita a favor de Iluminada López Matos, soltera y vecina de Mayagüez, quien adquirió por segregación la finca de este número para ser dedicada a Uso Público, con valor de $500.00, según consta de la escritura número 27, otorgada en Mayagüez, el 7 de agosto de 1987, ante el notario Fernando Bayrón Toro, la cual motivó la inscripción 1".**

[...]

38. La finca núm. 35,687 de 160.276 mc fue utilizada por la Sra. Edna Iris Martell González y el Sr. Luis M. Muñiz Pérez como parte de la finca número 29,358 desde la compra de la misma [en] mayo de 2007.

39. Posteriormente, al transferirse por compraventa entre estos y su hija Ednelis Lorraine Muñiz Martell, desde que la adquirió por compraventa de estos esta continuó poseyéndola a partir del 19 de febrero de 2019, sin que se interrumpiera la continuidad de la posesión que ejercieron sus padres a partir del 3 de mayo de 2007 cuando la adquirieron.

40. La posesión de la titular de la finca núm. 29,358, unida a la posesión en concepto de dueños por parte de los anteriores dueños Edna Iris Martell González y el [Sr.] Luis M. Muñiz Pérez, [h]a continuado de forma ininterrumpida sin que la Sra. Iluminada López Matos, o per[s]ona alguna, hayan interpuesto algún reclamo o disputa respecto a la posesión.

[...]

42. La Sra. Iluminada López Matos, quien se informó se encuentra en plena capacidad, fue debidamente emplazada sin que hubiese contestado la demanda. Durante el pleito fue procurada por orden del Tribunal, considerando que se trata de una adulta mayor de 60 años, a fin de que por sí o por conducto de apoderado pudiera comparecer a este caso a exponer su posición. No obstante, ni esta, ni su familiar más cercano conocido por la representación legal de la parte demandante, respondió a las gestiones realizadas por este por instrucción del Tribunal previo a anotarse la rebeldía. [5]

[...]

En virtud de las anteriores determinaciones, el TPI concluyó, que tanto Muñiz Martell como sus antecesores inmediatos habían estado en poder del predio que pretendían usucapir. No obstante, determinó que el área de parque era un bien de uso público conforme definido por el Artículo 237 del Código Civil, por lo cual este es inalienable, inembargable e imprescriptible. En ese sentido, el foro *a quo* expuso que el Art. 244 del Código Civil establece que la alteración de la clasificación de los bienes de uso público puede realizarse por las formas prescritas en nuestro ordenamiento

---

[5] Énfasis nuestro.

jurídico, y que la desafectación produce el efecto de la pérdida de la clasificación del dominio público del bien.[6]

Por consiguiente, el TPI explicó que, aunque la demandante probó que tanto esta como su madre, Edna Martell González han poseído de manera pacífica y en concepto de dueñas la finca anteriormente descrita, no surgía de la prueba presentada o del expediente judicial que el predio haya cesado de ser un área de uso público como un área de parque. Por tanto, ante el hecho de que no surgía evidencia de la desafectación de la finca en controversia, el TPI concluyó que esta ha mantenido su naturaleza imprescriptible, por lo que concluyó que no se configuró la usucapión y declaró sin lugar la demanda.

Inconforme, el 15 de julio de 2025, Muñiz Martell presentó Moción sobre Reconsideración[7]. El 15 de noviembre de 2025, notificada el 20 de noviembre de 2025, el TPI emitió una resolución interlocutoria[8], en la que reiteró los fundamentos de su sentencia y declaró No Ha Lugar la solicitud de reconsideración.

Inconforme, Muñiz Martell acude ante nos vía recurso de apelación y le formuló el siguiente señalamiento de error:

> Erró el Honorable Tribunal de Primera Instancia al desestimar la Demanda, aduciendo que por tratarse de un "área de parque" según surge de la descripción, no es posible que medie Usucapión; siendo la dueña de dicho predio la apelada Iluminada López Matos, no así ninguna entidad gubernamental; estatal o municipal y no se trata de un bien de uso público.

## II. Exposición del Derecho

### A. Disposiciones transitorias del "Código Civil de Puerto Rico" de 2020

El Artículo 1808 del Código Civil de Puerto Rico de 2020[9] establece que las acciones y derechos nacidos y no ejercitados antes

---

[6] *San Gerónimo Caribe Project, Inc. y Firstbank Puerto Rico, Inc.*, 174 DPR 518 (2008).
[7] Entrada 97.
[8] Entrada 100.
[9] 31 LPRA sección 11713.

de la entrada en vigor del Código Civil de 2020 subsisten con la extensión y en los términos reconocidos en la legislación precedente. No obstante, su ejercicio y procedimiento para hacerlos valer estará sujeto a lo dispuesto en este código.

Además, el Artículo 1814 atiende lo relativo a términos prescriptivos, de caducidad y usucapión, en los siguientes términos:

> Los términos prescriptivos, de caducidad o de usucapión que estén transcurriendo en el momento en que este Código entre en vigor, tienen la duración dispuesta en la legislación anterior; pero si el término queda interrumpido después de la entrada en vigor de este Código, su duración será la determinada en este.[10]

### B. La Usucapión

La usucapión es una forma de adquirir el dominio y otros derechos reales mediante la posesión y de acuerdo con las maneras y condiciones determinadas por ley.[11] La posesión tiene que ser en concepto de dueño, no interrumpida, pública y pacífica.[12] Su equivalente es el artículo 778 del Código Civil 2020.[13] El Código Civil de 1930 no definía quien era la persona que tenía la posesión en concepto de dueño. El Código actual la define como aquella que actúa como verdadera titular por los actos que realiza en relación con la propiedad.[14]

La usucapión ordinaria requiere la posesión de buena fe y justo título por el tiempo que determina la ley. La extraordinaria requiere poseer por el tiempo determinado por ley, sin necesidad de buena fe ni justo título. El dominio y demás derechos reales sobre los bienes inmuebles también prescriben por su posesión no interrumpida durante treinta años, sin justo título, ni buena fe y sin distinción entre presentes y ausentes.[15] Ahora bien, según el Código Civil

---

[10] 31 LPRA sec. 11719.
[11] Artículo 1830 del Código Civil de 1930, 31 LPRA sección 5241, hoy Artículo 777 del Código Civil, 31 LPRA sección 8021.
[12] Artículo 1841 del Código Civil de 1930, 31 LPRA sección 5262.
[13] 31 LPRA sección 8022.
[14] Artículo 779 del Código Civil, 31 LPRA sección 8023.
[15] Artículos 1840 y 1859 del Código Civil de 1930, 31 LPRA secciones 5261 y 5280.

2020, a la usucapión con justo título y buena fe para la adquisición de bienes inmuebles, le aplica un término de diez años. No obstante, la usucapión ocurre a los veinte años, cuando no existe título ni buena fe.[16]

El Código Civil del 1930 establecía que el poseedor actual podía completar el término necesario para la prescripción uniendo el suyo al de su causante.[17] Esta norma permaneció vigente en el artículo 789 del Código Civil de 2020[18]. Ahora bien, el Artículo 790 del Código Civil de 2020 dispone que la usucapión ordinaria del dominio o derechos reales en perjuicio de tercero contra un título inscrito en el Registro de la Propiedad **no tiene lugar sino en virtud de otro título igualmente inscrito, y el tiempo comienza a transcurrir desde la inscripción del segundo.[19]** Asimismo, el Artículo 795 del Código Civil de 2020, dispone que el adquiriente puede entablar la acción para que se le declare titular del derecho usucapido, una vez transcurre el término establecido. La sentencia favorable es título para la inscripción del derecho en el Registro de la Propiedad y para cancelar el asiento a favor del antiguo titular[20].

## C. Los Bienes y su clasificación

Nuestro Código Civil define el concepto "bienes" como las cosas o derechos que pueden ser apropiadas y susceptibles de valoración económica.[21] Así pues, estos se clasifican entre bienes públicos y privados; corporales e incorporales; consumibles y no consumibles; fungibles y no fungibles; divisibles e indivisibles; en el tráfico jurídico y fuera del tráfico jurídico; y muebles e inmuebles.[22] De igual forma, el aludido código divide los bienes por relación de

---

[16] Artículo 788 del Código Civil del 2020, 31 LPRA 8032.
[17] Artículo 1860 del Código Civil de 1930, 31 LPRA 5281.
[18] 31 LPRA § 8033.
[19] 31 LPRA § 8034.
[20] 31 LPRA § 8039.
[21] Art. 236 Código Civil de Puerto Rico de 2020, 31 LPRA § 6011.
[22] 31 LPRA § 6012.

pertenencia. Por ello, en nuestra jurisdicción los bienes pueden ser comunes, públicos o privados.[23]

Los bienes comunes son aquellos cuya propiedad no pertenece a nadie en particular y en las cuales todas las personas tienen libre uso, en conformidad con su propia naturaleza: tales son el aire, las aguas pluviales, el mar y sus riberas.[24] Los bienes privados, son: (a) los pertenecientes al Pueblo de Estados Unidos de América, al Pueblo de Puerto Rico y a cada una de sus subdivisiones políticas; y que no están afectados al uso o servicio público; y (b) los pertenecientes a las personas.[25] A su vez, estos pueden clasificarse como bienes de dominio público o bienes de dominio privado.[26] En lo aquí pertinente, el Artículo 238 define los bienes públicos de uso público como aquellos bienes **privados**, pertenecientes al Estado o a sus subdivisiones **o a particulares, que han sido afectados para destinarlos a un uso o servicio público.** Estos bienes públicos se denominan bienes de uso **y** dominio público.[27] En cuanto a los bienes de dominio público, contrario a los bienes particulares, los mismos gozan de una tutela diferente al ser inembargables, imprescriptibles e inalienables.[28] Es decir, estos bienes están fuera del comercio ya que por disposición de ley no pueden enajenarse, ni poseerse privadamente.[29] Por consiguiente, el Código Civil dispone que, en cuanto a la enajenación y administración de los bienes, las personas tienen la libre disposición de los bienes que han adquirido legítimamente, sin más restricciones que las establecidas por este Código.[30] Respecto a la administración y enajenación de bienes privados pertenecientes al

---

[23] Arts. 238 al 244, 31 LPRA § 6021-6027; *San Gerónimo Caribe Project v. ELA I,* 174 DPR 518, 557 (2008).
[24] Art. 241 del Código Civil, 31 LPRA § 6024.
[25] 31 LPRA § 6025.
[26] *Watchtower et al. v. Mun. Dorado I*, 192 DPR 73, 84-85 (2014).
[27] 31 LPRA § 6021. (Énfasis Nuestro).
[28] *Watchtower et al. v. Mun. Dorado I*, supra, citando a *Figueroa v. Municipio de San Juan*, 98 DPR 534, 562-563 (1970).
[29] *Íd.*
[30] 31 LPRA § 6026.

Pueblo de Puerto Rico, el aludido artículo dispone que esta se regirá por las leyes y reglamentos especiales y que solamente pueden ser objeto de enajenación en la manera y con las restricciones prescritas en las leyes y reglamentos aplicables.[31]

A tenor, el Artículo 244 establece que los bienes privados de las personas pierden esta cualidad por dedicarse a fines públicos incompatibles con la propiedad privada y readquieren su primitiva condición tan pronto cesan dichos fines. El cambio o la alteración de la clasificación jurídica de los bienes puede realizarse por cesar el fin público al cual fueron destinados, lo cual puede ocurrir en la forma prescrita por ley o reglamento.[32]

Como corolario de lo anterior, un bien puede transformarse en uno de dominio público, y viceversa, mediante actos de afectación *y* desafectación.[33] La afectación necesariamente implica que determinado bien ha sido destinado a un fin de interés público particular y puede deducirse de una declaración legislativa o mediante actos administrativos del Estado al amparo de una ley.[34] "Así, podríamos decir que luego de que el legislador advierte una necesidad social, fija los objetivos que constituyen la razón para someter al demanio[35] cierta categoría de bienes."[36]

Por otra parte, un bien cuyo uso es común, por su naturaleza, puede adquirir la clasificación de dominio público, sin que se requiera un acto formal de afectación.[37] De otra parte, la doctrina también reconoce la posibilidad de que tenga lugar la afectación de un bien, ello mediante un acto singular del soberano para construir

---

[31] *Íd.*
[32] 31 LPRA § 6027.
[33] *Watchtower Bible et al. v. Mun. Dorado I,* 192 DPR, a la pág. 88*; San Gerónimo Caribe Project v. ELA I*, 174 DPR, a la pág. 558.
[34] *Watchtower et al. v. Mun. Dorado I*, 192 DPR, a la pág. 89.
[35] Demanio o dominio público. *Véase,* Real Academia Española, *Diccionario de la Lengua Española*, Vigésima Segunda Edición (2001), a la pág. 744.
[36] *Íd.,* a la pág. 90.
[37] *San Gerónimo Caribe Project v. ELA I,* 174 DPR, a la pág 523; Art. 238-239 del Código Civil, 31 LPRA § 6021-6022.

o establecer un inmueble para fines públicos.[38] Por tanto, de lo anterior se puede colegir que, en efecto:

> "[el] carácter de dominio público de un bien, no depende de su naturaleza física o geológica. Lo determinante es su finalidad: el uso público del mismo. *De ahí que un bien, originalmente de dominio público, pueda transformarse en bien patrimonial, susceptible de enajenación, si su uso cesa de ser público.*" (Énfasis suplido.) [...].[39]

Por tanto, un bien afecto a un fin de interés público, puede advenir a ser de carácter privado y, por consiguiente, susceptible de apropiación individual, mediante un acto de desafectación.[40] Esta figura se perfila como la antítesis de la afectación, toda vez que produce el efecto de la pérdida de la clasificación de dominio público del bien objeto de tal acto. Así, para que este adquiera condición de propiedad particular, se exige que haya cesado el fin que se le hubiere dado.[41] Ahora bien, "la desafectación procede del mismo modo en que tuvo lugar la afectación."[42] De este modo, el hecho de que haya cesado el uso público, por sí solo, no resulta suficiente a tal fin.

La mutación dominical correspondiente en virtud de la desafectación exige que medie: (1) un acto soberano, ya sea mediante la aprobación de una ley a tales efectos o mediante un acto administrativo al amparo de los poderes delegados para ello; o, (2) por cambios en la condición natural de los bienes que los excluyan de la clasificación contemplada por la propia ley.[43] "De hecho, nuestro ordenamiento puede requerir una combinación de las

---

[38] *Watchtower Bible et al. v. Mun. Dorado I,* 192 DPR, a la pág. 90*; San Gerónimo Caribe Project v. ELA I*, 174 DPR, a la pág. 523.

[39] *Íd.,* a la pág. 565, citando de M. Godreau y J.A. Giusti, *Las concesiones de la Corona y propiedad de la tierra en Puerto Rico, siglos XVI-XX: Un estudio jurídico,* 62 Rev. Jur. U.P.R. 351, 563 (1993).

[40] *San Gerónimo Caribe Project v. ELA I,* 174 DPR, a las págs. 556-557.

[41] *Íd.,* a las págs. 565-566.

[42] *Íd.,* a la pág. 566.

[43] *Íd.,* a la pág. 567.

modalidades de desafectación para que esta proceda conforme a derecho."[44]

### III.    Aplicación del Derecho a los Hechos

Muñiz Martell plantea que el TPI erró al desestimar la demanda de usucapión, al concluir que el predio denominado "área de parque" no podía ser usucapido por ser de uso público.  Aduce que dicha área de parque nunca ha sido utilizada como tal, que no pertenece a ninguna entidad gubernamental, estatal o municipal, por lo que esta puede ser objeto de usucapión. No le asiste la razón.

De un examen minucioso del expediente ante nos, se desprende que la finca que Muñiz Martell pretende usucapir se encuentra destinada para uso público desde su segregación. Lo anterior, en virtud de la *Decisión Aprobando Plano de Inscripción Condicionado,* emitida por ARPE[45]. Conforme surge de esta determinación, la agencia condicionó la inscripción del referido solar sujeto a que se dedique "única y exclusivamente a uso público"[46]. En virtud de lo anterior, y a base de la prueba testifical y documental presentada durante el juicio, el TPI concluyó correctamente que Muñiz Martell estaba impedida de usucapir el área de parque, pues el predio está afectado a un uso público. Siendo así, y ante el hecho de que no surge prueba de que se hizo o inició el proceso de desafectación del área de parque, este es inalienable, inembargable e imprescriptible hasta tanto ocurra la desafectación mediante las formas prescritas en nuestro ordenamiento jurídico. El hecho de que la dueña registral del área de parque, sea una persona privada, *per se* no invalida el uso público al que está afectado el predio, pues conforme establece nuestro ordenamiento jurídico, **los bienes privados de las personas pierden dicha cualidad por dedicarse a fines públicos incompatibles con la propiedad privada** y readquieren su

---

[44] *Íd.,* a las págs. 567-568.
[45] Véase, Entrada 81, Anejo identificado como "ARPE".
[46] *Íd.*

primitiva condición tan pronto cesan dichos fines.[47] No obstante lo anterior, el cambio o alteración jurídica de los bienes puede realizarse por cesar el fin público al cual fueron destinados, **lo cual puede ocurrir en la forma prescrita por ley o reglamento**.[48]

Por lo anterior, y ante el hecho de que Muñiz Martell no presentó prueba de que se haya realizado la desafectación del área de parque, concluimos que el foro primario no incidió al desestimar la demanda de usucapión, por lo que procede confirmar la sentencia apelada.

### IV.     Parte Dispositiva

Por los fundamentos que anteceden, los cuales hacemos formar parte de la presente *Sentencia*, confirmamos el dictamen apelado.

Notifíquese.

Lo acuerda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[47] Art. 244, 31 LPRA § 6027.
[48] *Íd.* Énfasis Nuestro.